The next case for argument is 23-1719, StratosAuto v. Hyundai. Good morning, Your Honors. May it please the Court. StratosAudio raised a variety of issues with a common theme. What we're looking at here is arbitrary board decision-making, and it's what we call the square peg, round hole problem, like mapping a green bicycle onto the plain meaning of red car. So I'd like to start where the briefing ends with dependent claim 15 and its server correlation requirement. Can I just ask a question about that? We've got two IPRs here.  Volkswagen seems to be missing claim 15. I think it's the one that's just in Hyundai. So if we were to decide hypothetically to affirm Hyundai, that would take care of all of the claims in Volkswagen, whereas the reverse would not be true because 15 is left out of an affirmance on Volkswagen. Is that just logistically the way it's working? You're exactly right, Judge. If the Court affirms on all of Hyundai, I believe that would effectively moot Volkswagen, but if the Court affirms on all of Volkswagen, we still have claim 15 in Hyundai to deal with. And you were going to start with claim 15? That's right, Judge. And on that, there's no real debate that Hyundai's proofs did not show that in the Ellis-Crosby combination, any server in any respect did claim 15's correlation of a merchandise purchase request with the instance of a song playing at the time of the request. The only thing Ellis states is that, quote, the user may, for example, purchase merchandise that is related to the music program that the user is listening to. That's paragraph 87 in Ellis. On its face, this one statement does not support the Board's findings. There is something called the Merchandise Facility 10 in Ellis, and that receives these purchase orders. All this facility needs to complete that disclosed purchase is just any garden variety e-commerce. The merchandise identification, not any song identification, anything playing in the background at that time, or even in the Board's thinking, the technical terminology of PID or what we call data lane information, those weren't necessary in Ellis to complete the purchase. So petitioner's expert, we believe, invented this feature on top of Ellis. As evidenced in appendix 42 in the Board decision, and page 44, where the Board relies on the expert's statements about what a person, quote, would have understood to be, quote, desirable. But recall, this on claim 15 was an express disclosure theory from Hyundai. So it's unclear what the would have understood and desirable commentary should have done for their case. I'm not sure if I'm following your argument. I would have thought that what the Board found their expert was saying is that a person wearing a skill in the art reading, I think it's Ellis, would have inherently and always seen this in there. Isn't the Board the ones who get to make fact findings about what one in skill in the art would read in the prior art references? Indeed, that's not how the Board ruled. There's no inherency type ruling here. There's simply a quotation of the expert where the expert says desirable and would have understood. We'll put aside inherency. Maybe that's my mistake. But isn't the Board saying one in skill in the art reading this reference would see the following in there? I don't believe the Board even went that far. I think in the Board's quotation of the expert, even that expert in the quotation doesn't say that there is a server in Ellis that does these things needed in claim 15. The expert testimony is at appendix page 885 to 886. That's Dr. Almaroth. There's no discussion there at 885 and 886 of the server doing anything. It's just Dr. Almaroth saying in generalities the same thing that the reference says, which is, gee, it's nice that when music is playing, someone can buy something. And then the reply declaration doesn't go any further either. 1479 in the record is where Dr. Almaroth has his reply declaration on this point. Still, no indication, no quotation from Ellis that anything like this is happening at the server. So the Board only went so far as to say that a user doesn't purchase, quote, this is the actual Board words, Your Honor. What's the page? Page 46. The user doesn't purchase, quote, that is related to the music program that the user is listening to at the time the purchase is made, i.e., correlated with the specific instance of the first media content. Even this Board finding, if we elevate it to the level of the finding, does not map onto the claim language, which requires a receiving server configured to do the correlating. So the actual claim requires more than someone's ad hoc mental correlation of why a consumer is pressing the purchase button. Thus, the Board clearly erred to find Ellis' disclosures meet the Claim 15 limitations, and this Court should reverse this to Claim 15. And then onward to data identifying a specific instance of media content. Before you jump into that, my understanding was there were some grounds in the petition that the Board did not reach given its findings. So wouldn't we at best for you need to vacate and remand for the Board to reach those other grounds? In the cases involving Hyundai, that is correct. In the case involving Volkswagen, which is actually part of the appeal number I'm talking on right now, that IPR number reached all grounds, rejected I think four of Volkswagen's grounds and only granted on one. So there's an affirmative rejection on Volkswagen's solo case, if you will. But the two cases that Hyundai is involved in, you're right, there would be some kind of remand. So the specific instance language, that spans all challenge claims. And here we have to keep in mind Volkswagen's DeWeese reference and Hyundai's Ellis reference. In DeWeese... And the Crosby reference? Well, there's a debate between the parties. I can go into the Crosby reference as well. So I'll add Crosby to my commentary. But in DeWeese, the Board mapped this limitation onto television program guide data. In Ellis, onto so-called PIDs and PID maps. And in Crosby, the Board, I believe, the fair reading of the Board decision is it didn't do any claim mapping at all of this claim limitation because just a page earlier, it had already done that mapping onto Ellis. But within Crosby, there had been a contention that some kind of segment ID, along with time of day or something like that, is going to qualify from their contention point of view as this claim limitation. So the PID and PID maps, just to go back to those, those are like numbered data lanes that help with multiplexing. But the problem with all of these mappings by the Board is that they're arbitrary and just not rational. So the claim requirement is data enabling the identification of a specific instance of the first media content that travels with that media content itself. And this is happening in the claim at a receiver module, one receiver module, as hypothesized in the claim language, where we get to identify the specific instance of the media content coming in, being received on that receiver module. The scope of this wording refers to data that can identify an occurrence, an occurrence of this digital transmission of media. That is the plain meaning of the language, derivable from many dictionary definitions of the word instance. Our briefing analogy was that let's say there's Law & Order, an episode of Law & Order that's playing. One Federal Circuit judge could be watching that Law & Order episode digitally, and another Federal Circuit judge can be watching that same Law & Order episode at the same time on the same platform. Neither DeWeese nor Ellis disclosed anything that would allow the distinction between the media content Law & Order coming into the respective judge's digital television set. Would you say the same thing about, I don't know, assume a million people are watching Law & Order over the air? Is each one of those a different instance, because there are a million different, you know, antennas out there or over the cable? In the DeWeese world, a million different people would all share one program data information set. They would all share the uniform program guide information, which is the title of the program and the time window that it comes in. Hovering over their imaginary heads, it's the same, let's say, string of zeros and ones. But in the patented world, required by the patent claim, Mr. Christensen's patent, it requires that there's a specific instance of that receipt that's identifiable from the data. A specific instance means you've got to have something, as we argued in our briefing, something akin to a serial number that allows the distinction of one receiving module's receipt of this programming versus another receiving module's receipt of the same programming. Even though the programming is identical, even though it was all sent out in a traditional broadcast way at the very same time, because at some point it forks or something into a million different you need a million different identifiers. Yes, exactly, Your Honor. That's exactly our point. And that's the strength and the power of this invention, is that downstream of this activity at digital receivers and what have you and the back end when somebody purchases something, you get very high resolution, very powerful reporting capabilities that as a technological matter the business world had never seen before. There are other issues I didn't get to, such as output system, and we stand on our briefs to demonstrate the several ways that the Board cared. I think you began your statement by saying this case involves arbitrary Board decision-making. Are you just speaking colloquially, or are you asking us to review under some arbitrary and capricious standard of review? You'll see it in the briefing, both arbitrary and capricious and substantial evidence review. And where the rubber meets the road, we give, I'm using too many metaphors, we like the metaphor of claim language that says a red car, because we think our case is like a green bicycle in the prior art disclosure. But as I sit down to decide your case, am I reviewing the record for substantial evidence, and therefore I affirm the Board if I find substantial evidence, or am I only looking to see if they acted arbitrary and capriciously, which may be even harder for you to meet? I understand. I'm trying to answer your question. I can't distinguish the two on the facts of this case, the two frameworks of review, because if the prior art, to my eye, just under any point of view of the prior art, can't possibly rationally map onto the claim limitation, then it's an arbitrary, irrational decision by the Board. And also lacks substantial evidence, I guess you would say.  Okay. I'll reserve. Let's hear from you. I'll reserve. Thank you. Thank you. Mr. Fink, are you up first? Mr. Cordo, on behalf of Volkswagen, Your Honor, may it please the Court, as a housekeeping matter, I will address the specific instance limitation in the DeWeese reference at issue in the Volkswagen case. My colleague, Mr. Fink, will address the Crosby and Ellis references at issue in the Hyundai case, as well as Claim 15. And, Judge Crosby, you are correct that if the Court affirms in the Hyundai appeal, then all the issues here will be moot. If the Court affirms in this appeal, then the only claim left to reach in the Hyundai appeal is Claim 15. Turning to Claim 9 and the specific instance limitation, this limitation is broad in scope, and what Stratis is trying to do is to backdoor a very narrow construction of this phrase through what it says is the plain and ordinary meaning. Now, that's wrong. It's forfeited, and it's unduly narrow, as I'll explain in just a moment. But at the end of the day, substantial evidence supports the Board's finding that DeWeese satisfies this limitation. And we see that at Appendix 113, the Board expressly credited our expert testimony at Appendix 4312 to find that the first media content is DeWeese's television programming, and that the claim data that identifies a specific instance of that content is DeWeese's program guide. And that makes sense, because the guide describes the program times, channels, and descriptions. And that data, critically, is continuously updated in real time, as DeWeese makes clear in Paragraph 60. And so not only does DeWeese identify a television program in the abstract, it identifies a particular episode that a particular user sees at a particular time. That's very specific, Your Honors, and that's even narrower than what the claim requires. So if I follow correctly, even if we said the claim construction they're arguing now is not forfeited and was not wrong, it was right, you think the Board's already made sufficient findings that we would affirm for substantial evidence even under their construction? Well, under any plausible interpretation of the phrase specific instance. Does that include theirs? Well, it's a little unclear, Your Honor. Today I heard a construction that is much narrower, and that's the construction in the gray brief, which is that the claim data has to distinguish a program that is sent to one user from the same program sent to another user. If that's their construction... Even sent at the same time. Even sent at the same time, Your Honor. That construction was never made below, and that's why I said it was forfeited. In any event, that construction is wrong. It's unduly narrow. The claim doesn't say anything about distinguishing between users and doesn't even require multiple users, in contrast to Claims 1 and 12, which do require a plurality of user devices. All the claim requires is data enabling the identification of a specific instance. Likewise, the specification is much broader than the construction that Stratis now proposes. In Appendix 159, Column 7, Line 45, the patent says that the claim data can be any means for identifying, and then Column 11 says that the data doesn't even have to be unique. So there simply is no basis to read that very narrow construction into the plain and ordinary meaning of the term, Your Honor. And under the plain and ordinary meaning, substantial evidence supports the Board's finding. I will turn it over to my colleague, unless there are other questions. Thank you, Your Honor. Thank you, Your Honors, and may it please the Court, William Fink for Appellee Hyundai. So I'd like to pick up where my colleague left off, which is on the issue of the specific instance. My colleague addressed the claim construction. This is, I'm sorry, the Claim 9, right? The same two-word phrase appears in Claim 9 and Claim 15, right? Aren't they both specific instances? Yes, that's correct, Your Honor. There is, yes, that is the same specific instance. But you're talking about Claim 9 now. So I'm going to talk about Claim 9 specific instance. So I'll just say that under any reasonable construction, the Board's findings with respect to the Ellis and Crosby grounds are supported by substantial evidence, as the Board's reasoning is very clear. Before I get to that, I will just refer to that, you know, if Your Honors agree that the patent owner did not address the Ellis-Crosby combination in his blue brief, that the patent owners forfeited the arguments that Ellis and Crosby do not render Claim 9 obvious and disposes of all the issues in the Hyundai appeal as well as the Volkswagen appeal, except for Claim 15. So turning to the merits of the specific instance, my colleague explained that the new claim construction that the patent owner is advancing, where the specific instance has to be, the data enabling the specific instance in Claim 9A, has to drill down all the way to which user among the millions of users that may be watching an episode of Law & Order, that that's both an argument that was not made before the Board and is not made crisply, at least in the blue brief, at all. Under the constructions that the Board was or the arguments that the Board was engaging with, and I'll refer to appendix starting at the Board's final written decision, starting at appendix 21, where the Board is addressing Claim 9A, which is specifically the first media content and data enabling the identification of a specific instance of the first media content. And so what the Board there engages in is engaging the patent owner's arguments. The Board first addresses the petitioner's evidence with respect to the Ellis prior art, and the Ellis being something that broadcasts a music program on, for example, one medium and graphics text related to music program on a different medium that can be displayed. So that's the two types of media content. And so the Board addresses the arguments with respect to what Ellis teaches up to page 24 of appendix, appendix 24, and then the Board transitions to the Crosby teachings. Let me see. Up until you get to 24, they're just reciting what the petitioner and the patent owner's positions were, right? Yes. And they start on 24 by saying they agree with you. We agree with petitioner. That sentence there that begins, we agree with petitioner, that Ellis' PID and PID maps meet the relevant portions of 9A, that sentence is where the Board begins its findings with respect to Ellis and Crosby, and I'll go into that. But that sentence is where the patent owner would have you stop the analysis and say, there's no findings with respect to Crosby. That's not true. The findings with respect to Crosby and Ellis begin on the next page where, and I'm on appendix 25, the last sentence of the second full paragraph, where the Board said, as petitioner correctly points out, a person of ordinary skill in the art would have considered Crosby for all that it teaches, including all of its teachings regarding program segment, ID, date, and time, and citing the petition. The Board goes on in the next paragraph to point to the petitioner's citing to Crosby paragraph. So is the point of what you've been telling us for the past three or four minutes, that they didn't appeal the Crosby findings? They did not. They never discussed them in their brief? It's not in the blue brief except in a footnote. So it's sort of a waiver? Yes, Your Honor. So the Ellis and Crosby combination, the patent owner refers to it in a footnote and says that it's not really part of the Board's findings or it's not part of the Board's findings with respect to this limitation. The only way the patent owner could say that is to ignore everything that the Board said. So does that take us necessarily to your view that everything that he's arguing about is deficient in the Board's reasoning with regard to Ellis would have been found in Crosby? I think that's correct, Your Honor. Yes. Everything that is deficient. And we have to find that as well. That everything is taught by Crosby? I think not that everything, but everything he says is deficient in Ellis. Either we disagree with him on Ellis or we say, well, it wasn't in Ellis, it was in Crosby. Well, I think if you disagree with the waiver argument, you could still look at the Board's findings with respect to Crosby and how the Board engaged with the party's arguments and see that the Board was considering the teachings of Crosby and specifically the program segment ID, the date and time of the broadcast and see that the Board addressed all that and then was careful to say... We could decide that that's correct. A, that it found it, and B, that it was supported by substantial evidence. That's correct. Okay. Can you just say why the PIDs from Ellis 2005 independently show this claim limitation or are you not... I thought the Board did find that, but also found with respect to Crosby. They did make that finding on Appendix 24, but if you look at Appendix 50 and 49 and 50 where the Board summarized its conclusions, you'll see on Appendix 50 a table. And the middle column or the fourth column in the table says, Do you see that? The Board left blank all of the grounds of unpatentability raised by the petitioner, except for Ellis and Crosby.  In particular, it left blank the fourth row, Ellis 2005 by itself.  Is there anything, any other claim element that was found in Crosby? If the PID meet this claim element, does that mean everything was in Ellis 2005? If the PIDs themselves meet the limitation, then everything is in Ellis. Everything is in Ellis. But I think the Board was unclear as to... Well, the Board was engaging with the arguments, and I think it's clear that the Board was uncomfortable in relying solely on Ellis. In fact, it says on Appendix 49 under the heading Other Asserted Grounds that it was not addressing Ellis alone. Let me ask a variation on the question. Is there any element in any of the claims, not just Claim 9, 9, 10, 11, and 23 in particular, that would not be in Ellis itself if the PIDs performed this function? I'm trying to figure out what to infer about what the Board found regarding Crosby from the fact that the Board declined ultimately to rule on Ground 4. I don't think the... I think the answer to other claim limitations, they weren't argued below. So I think there was no dispute that what was argued with respect to Ellis was not disputed. I don't know offhand whether or not... Well, at Claim 23, there's pretty extensive discussion of Crosby.  So that could, in fact, explain the choice not to rule on Ground 4. Correct. Correct. I think that the Board... Yes, I think that the Board went with what it saw as this is dispositive of all the issues in the IPR and stopped there. You want to get to Claim 15 before you... Yes. Yes, Your Honor. So with respect to Claim 15... With respect to Claim 15... What my colleague here said was that there is really only a sentence from expert testimony and nothing to support it. And Your Honor asked whether or not Ellis itself inherently supports it. And not that this is an inherency case, but Ellis does specifically teach a correlation between... And let's just look at the claim language of 15. Ellis does specifically address Hyundai's argument that there is a teaching of a response message and then that a computer server is configured to correlate the response message, the response message being a purchase request, to the second media content, which could be advertising or things related to promotional materials, with the specific instance of the first media content. And what Hyundai's pointed to was paragraphs 87 through 89 of Ellis. And that's what the Board credited. And specifically with respect to 87, Ellis explains that there's a music application which may provide the user an opportunity to purchase merchandise, and then it gives examples, or access other interactive feature that are associated with a music program. And the music program is referring to there is what the user is listening to in the first media content. So now it's talking, Ellis is talking about what is the second media content, which is the stuff that the user is able to look at while the user is listening to the music program. So that is where the two things are linked. And then it goes on to say that the purchase merchandise is related to the music program that the user is listening to, or may be, this is still in paragraph 87, I think this is the fourth sentence, or may purchase merchandise related to the music program that the user is viewing information for. And the Board cited this sentence as being, before it got to the expert testimony, the Board cited this sentence as establishing the association between the first content, the second content, and the response to the content. And the Board cited that appendix, appendix 46, about, so the only full paragraph, or the full paragraph before dependent claim 23. The Board gives its findings. The petitioners demonstrated that Ellis' merchandise request, which includes the necessary information for making a purchase, gives examples that the merchandise necessary, the merchandise identifier, user identifier, or account number. So it gives a bunch of things. And it says, other suitable information, this is paragraph 88 in appendix 1331, other suitable information, all those things are sent from the user back to the server. And so it says the user, this relates the content that the user is listening to at the time the purchase is made, i.e., correlated with the specific instance of the first media content. And then it credits the explanation provided by Dr. Almaroth as consistent with these disclosures. I see I'm out of time. Thank you, Robert. To keep the time, we'll add two more minutes to the two minutes remaining. Last issue first, I'll keep that thread. What my friend just said didn't say the words, the server does the correlating. I think that's very important. The server has to do the correlating in claim 15. And I invite your honors to read paragraphs 87 through 89 of the Ellis reference, because it will never say that there's any correlating of these two specific things at a server. On to the waiver discussion. Page 38 of our blue brief does two things for us. Number one, it does contain the alternative argument on Crosby. Page 38 of our blue brief, footnote 3, has a discussion on that. Which in context was all we needed to preserve the issue, and I'll explain the context in just a moment. And then in the body, sort of the center of page 38, we absolutely say that if data identifies an occurrence, and I'll skip a few words, e.g. by reflecting a particular user on a particular stream for that particular content, it will necessarily do the thing that we argued it will do. So in other words, we're preserving the specific user argument in the blue brief, so there is no possible argument for waiver. Does it matter that it says identifies an occurrence, e.g. by reflecting something akin to a unique serial number, not for a particular user, but for a particular transmission to a particular user, or does your point hold? It's the Venn diagram. It's that specific instance. So it has to be all of the above under our position, your honor. Crosby itself, so claim 23 is where the board relied on Crosby in the combination in a very express and necessary way. Before the board got to claim 23, it had to glue Ellis to Crosby under this court's legal standards for motivation to combine. So if your honors look on page 26, all of the findings about Crosby and its content were to talk about how it interleaves and glues into, in the mind of a person of ordinary skill, the reference of Ellis 2005. If you go two pages backwards on page 24, there's that explicit finding that says something about Ellis, and it says this, we agree with petitioner that Ellis 2005's PID and PID maps meet the relevant portions of limitation 9A, because they identify where data is within the stream and distinguish between different tracks. That's a claim mapping. That's Ellis with the board saying go to Ellis for limitation 9A. Two pages later, I heard my friend talk about the unclarity in the decision and I agree with that, but the unclarity works in the direction of signifying solely that the board went no further than. For claim 9, why would gluing be necessary under your view that the board wasn't thinking about the contribution of Crosby to this particular element? Because there are no other elements that are contested outside Ellis. Whereas for claim 23, they need it. I confess when I first read this record, I had that very same question and I have not answered it for myself, so I can't give you an answer, your honor. I think it's just strange board decision making, as acknowledged through my friend talking about the unclarity in the decision. So for those reasons, your honors, we ask that the board reverse. Thank you.